IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-cv-348-BO

| | |
|---|---|
| MICHAEL HEIDBREDER, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    O R D E R |
| | ) |
| EPIC GAMES, INC., | ) |
| | ) |
|     Defendant. | ) |

This matter is before the Court on defendant's motion to compel arbitration. [DE 11]. For the reasons that follow, defendant's motion [DE 11] is GRANTED.

## BACKGROUND

Defendant Epic Games is the developer of Fortnite, a popular videogame with millions of players in the United States and around the world. Fortnite can be downloaded and played for free by merely creating an Epic Games account with a name and valid email address, but users have the option of making additional in-game purchases. DE 1, ¶ 16. These in-game purchases require a credit or debit card, the information for which is then stored by Epic Games. *Id.* ¶ 17.

Plaintiff is a Missouri resident and had an Epic Games account that was linked to his debit card. *Id.* ¶¶ 11–12. Plaintiff's complaint alleges that despite assurances to users that the Epic Games prioritized the security of user personal information, cyber vulnerabilities existed in Fortnite's web infrastructure as early as November 2018. *Id.* ¶ 23.

Plaintiff alleges that defendant's inadequate data security and Fortnite's cyber vulnerabilities allowed hackers to breach user accounts and that plaintiff was a victim of such a hack. *Id.* ¶¶ 36–41. Specifically, between November 2018 and January 2019, plaintiff's debit card

associated with his Epic Games account was fraudulently charged for in-game purchases as a result of the data breach. *Id.* ¶ 39. In response, plaintiff filed this putative class action in August 2019, bringing both statutory and common law claims against Epic Games.

Through the instant motion, defendant moves to compel plaintiff to arbitrate his claims individually in accordance with the arbitration provision contained in a March 2019 End User License Agreement ("EULA"). The EULA was agreed to by a user of plaintiff's Epic Games account on March 15, 2019.

The arbitration provision contains additional features, including: (1) an agreement to arbitrate on an individual basis only; (2) a delegation clause granting the arbitrator the power to determine whether a specific dispute is governed by the arbitration clause; (3) a venue selection clause giving users the choice of venue between their home state or North Carolina; (4) Epic Games's agreement to pay arbitration fees under $10,000, share costs after $10,000, and not seek attorney's fees against users; and (5) a 30-day opt-out provision, giving users a 30-day window after agreeing to the EULA to opt-out of the arbitration provision. Rein Decl., Ex. B, § 12, DE 12-1 (hereinafter "EULA § 12").

Plaintiff opposes enforcement of the arbitration provision for three reasons. First, plaintiff argues that he never agreed to the EULA on March 15, 2019. Pl.'s Resp. at 7–11, DE 15. Rather, it was his minor son, who lacked contractual capacity and now disaffirms the EULA, who clicked "agree" to the terms of the EULA. *Id.* Second, plaintiff argues that the privacy-related data breach claims are outside the scope of the arbitration provision. *Id.* at 11–15. Third, plaintiff claims that the arbitration provision, the delegation clause, and the class action waiver are unconscionable. *Id.* at 15–20.

DISCUSSION

The Federal Arbitration Act ("FAA") "reflects a liberal federal policy favoring arbitration agreements." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (quotations omitted). "Accordingly, due regard must be given to the federal policy favoring arbitration . . . ." *Id.* (quotations omitted). A district court must stay proceedings and grant a motion to compel arbitration if the moving party proves: (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Id.* at 500–01. In addition, when determining whether the parties agreed to arbitrate, courts apply state law principles governing contract formation. *See, e.g., Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 85 (4th Cir. 2016).

There is no dispute as to factors one, three, and four. At issue—and what is contested by plaintiff—is that the arbitration provision contained in the EULA at issue is valid, enforceable, and covers the claims in this case. The record is clear that a written EULA, containing the arbitration provision at issue, was agreed to on March 15, 2019 by a user of plaintiff's Epic Games account. Rein Decl. ¶ 14, DE 12-1. But as mentioned above, plaintiff raises three arguments for why it should not be enforced. The Court addresses each of these below.

Plaintiff's Minor Child and the EULA

Plaintiff first argues he never accepted the terms of the EULA. Instead, it was his minor child, K.H., who was playing Fortnite and agreed to the EULA on March 15, 2019. Plaintiff contends that K.H. lacked contractual capacity and now disaffirms the agreement. *See* K.H. Decl., ¶ 5, DE 15-2. This objection fails because under basic principles of principal-agent law,

K.H. was acting as plaintiff's agent and had both actual and apparent authority to agree to the EULA and bind plaintiff.

"Actual authority is that authority which the agent reasonably thinks he possesses . . . ." *Stainless Valve Co. v. Safefresh Techs., LLC*, 231 N.C. App. 286, 290 (2013). Actual authority may be implied from the specific facts and circumstances of the situation. *Munn v. Haymount Rehab. & Nursing Ctr., Inc.*, 208 N.C. App. 632, 638 (2010). "Apparent authority is that authority which the principal has held the agent out as possessing or which he has permitted the agent to represent that he possesses." *Heath v. Craighill, Rendleman, Ingle & Blythe, P.A.*, 97 N.C. App. 236, 242 (1990) (quotations omitted). A principal's liability is determined by "what authority the third person in the exercise of reasonable care was justified in believing that the principal had, under the circumstances, conferred upon his agent." *Id.* (quotations omitted).

Under the FAA, whether an agent possesses actual or apparent authority to bind the principal to an arbitration provision is "a question for a factfinder where the evidence is either conflicting or admits of more than one inference." *Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 238 (4th Cir. 2019) (quotations omitted). In analyzing such questions, a court should determine if there are genuine issues of material fact regarding the existence of the agreement to arbitrate. *See, e.g., Chorley Enterprises, Inc. v. Dickey's Barbecue Restaurants, Inc.*, 807 F.3d 553, 564 (4th Cir. 2015). Because an objective of 9 U.S.C. § 4 is to decide the arbitration issue quickly—an objective which would otherwise be frustrated by "round after round" of discovery—the procedures over discovery on a motion to compel arbitration are committed to the "sound discretion" of the district court. *See Berkeley Cty. Sch. Dist.*, 944 F.3d at 242. On this point, the Court is satisfied with the number of exhibits and declarations submitted with the parties' motions and finds that no additional discovery is warranted.

4

The Court finds that there is no genuine issue of fact[1] as to whether K.H. acted with actual and apparent authority—indeed, he did.

With respect to implied actual authority, the evidence illustrates that K.H. used plaintiff's Epic Games account with exclusivity, regularity, and for such a duration that K.H. would have reasonably believed he had the authority to click "agree" to the EULA terms. Plaintiff created the Epic Games account in his name but did not himself play. Heibreder Decl., ¶¶1–3, DE 15-1. Instead, K.H. used the account. *Id.* ¶ 3. K.H. used plaintiff's account "every day" to play Fortnite starting in November 2017 when the account was created. K.H. Decl., ¶¶ 1–2, DE 15-2; Kelz Decl., Ex. A, DE 16-1. K.H. knew or had access to the login credentials for plaintiff's account. K.H. Decl. ¶ 2, DE 15-2. Furthermore, the record contains no evidence that tends to show it was unreasonable for K.H. to believe he had authority to agree to the EULA considering his regular use. Put another way, the evidence demonstrates that plaintiff created an Epic Games account and then gave K.H. free rein over the account for over a year. Under such circumstances, K.H. reasonably believed he had the implied actual authority to click "agree" to the EULA. No genuine issue of fact exists as to K.H.'s actual authority.

With respect to apparent authority, the evidence demonstrates that defendant was justified in believing that the user of plaintiff's Epic Games account possessed the authority to agree to the EULA. Defendant had no reason to believe that the user of plaintiff's account was anyone other than plaintiff—or someone to whom plaintiff gave authority over his account. Epic Games

---

[1] Buried in footnote 3 of his response, plaintiff references the FAA's provision for a summary trial on the factual issue of the making of the arbitration agreement. Pl.'s Resp. at 6. As the party alleged to be "in default" of the arbitration agreement, plaintiff carries the burden to demand a summary trial on the issues. 9 U.S.C. § 4. The Court finds that plaintiff's passing reference to the summary trial provision does not constitute a formal demand, and consequently, that the Court has the power to determine the issue. *See id.*

5

accounts are personalized, associated with specific names and email addresses. Users maintain their own passwords. *See* K.H. Decl., ¶ 2. DE 15-2. Defendant was therefore justified in believing that the user of the account, who would have needed plaintiff's login credentials, had the authority to agree to the EULA. No genuine issue of fact exists as to K.H.'s apparent authority.

The Court finds that K.H. acted with implied actual and apparent authority when he accepted the EULA and that plaintiff is bound to the agreement.

Scope of the Arbitration Provision

Plaintiff's second argument is that the privacy-related claims against defendant are outside the scope of the arbitration provision. Whether the claims fall within the scope of the provision is not a question for this Court. "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). The EULA in this case specifically states: "You and Epic agree that whether a dispute is subject to arbitration under this Agreement will be determined by the arbitrator rather than a court." EULA § 12.3.1. The Court must defer to the arbitrator as to the question of the arbitration provision's scope.

Unconscionability

Plaintiff's final argument is that the arbitration agreement, delegation clause, and class action waiver are unconscionable. "A party asserting that a contract is unconscionable must prove both procedural and substantive unconscionability." *Tillman v. Commercial Credit Loans, Inc.*, 362 N.C. 93, 102 (2008). [P]rocedural unconscionability involves 'bargaining naughtiness' in the form of unfair surprise, lack of meaningful choice, and an inequality of bargaining power."

6

*Id.* at 103. "Substantive unconscionability, on the other hand, refers to harsh, one-sided, and oppressive contract terms." *Id.*

Plaintiff contends that the EULA provisions at issue are unconscionable because defendant is attempting to apply the agreement retroactively against injuries that already accrued. Plaintiff's injuries occurred between November 2018 and January 2019 whereas the EULA was presented and agreed to by plaintiff in March 2019. Plaintiff argues defendant knew about data breaches, failed to provide notice, then foisted a new EULA upon plaintiff in March 2019 to avoid liability, resulting in unfair surprise and lack of meaningful choice.

Plaintiff does not satisfy either the procedural or substantive unconscionability prongs. To start, arbitration agreements applied retroactively against claims that have already accrued are enforceable if the clause's language is broad enough. *See, e.g., Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 267–68 (4th Cir. 2011). Whether this specific provision applies to pre-existing claims, as discussed above, is a question for the arbitrator. That said, the courts' sanctioning of retroactive arbitration agreements is relevant as it undermines plaintiff's specific emphasis on retroactivity as a basis for unconscionability. *See* Pl.'s Resp. at 18.

Second, plaintiff greatly exaggerates the lack of notice and choice users were given with respect to the arbitration provision at issue here. Prior to March 2019, the parties were governed by a previous EULA, which plaintiff agreed to when he created his Epic Games account. The previous EULA stated in bold type: "Epic may issue an amended Agreement . . . at any time in its discretion by posting the amended Agreement . . . on its website or by providing you with digital access to amended versions . . . when you next access the Software." Rein Decl., Ex. A, § 14. This constitutes reasonable notice that defendant could amend the EULA terms. More important, though, is that users had meaningful choice over the arbitration provision. Defendant

provided users a 30-day window after accepting the EULA to opt-out of the arbitration provision. EULA § 12.6. When presented with the new terms in March 2019, plaintiff could have exercised this opt-out right or, simply, stopped playing the game if he objected to arbitration.

For substantive unconscionability, the terms at issue—the arbitration agreement, delegation clause, and class-action waiver—are common terms in modern contracts that have recently been sanctioned by the courts and can hardly be considered substantively unconscionable. *See Schein*, 139 S. Ct. 524 (2019) (rejecting a "wholly groundless" exception to a delegation clause), *and Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018) (holding that the National Labor Relation's Act does not prohibit enforcement of a class arbitration waiver in employment contracts). Moreover, defendant's arbitration provision contains other user-friendly terms, including the opt-out right, choice of venue, defendant pays arbitration costs, and defendant waives the right to seek fees and costs. EULA § 12. The arbitration, delegation, and class waiver provisions are neither procedurally nor substantively unconscionable.

In sum, the Court finds that the arbitration provision is valid and enforceable. In accordance with the delegation clause, whether the specific claims brought by plaintiff are covered by the scope of the agreement is a question for the arbitrator. Plaintiff is bound to individually arbitrate his claims against defendant.

## CONCLUSION

For the foregoing reasons, defendant's motion [DE 11] is GRANTED. The proceedings are STAYED and plaintiff is COMPELLED to individually arbitrate his claims.

SO ORDERED, this \_\_\_6\_\_ day of February, 2020.

*[signature]*
TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE